# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# SOUTHERN DIVISION

| | |
|---|---|
| GLENDA RITZ-LABBEE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 10-CV-03040-NKL |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| | ) |
| Defendant. | ) |

## ORDER

Before the Court is Plaintiff Glenda Ritz-Labbee's Social Security Complaint [Doc. # 3] brought under 42 U.S.C. § 405(g) to review a decision of the Commissioner of Social Security ("Commissioner") denying her applications for a Period of Disability, Disability Insurance Benefits, and Supplemental Security Income. Because the Court finds that the decision of the Administrative Law Judge ("ALJ") was based on substantial evidence, the Court DENIES Plaintiff's Complaint.

## I. Background[1]

Plaintiff Ritz-Labbee filed applications for disability insurance benefits on January 14, 2008 and for Supplemental Security Income on January 29, 2008. In her applications, Plaintiff stated that she was born in 1968 and became disabled on April 15, 2007. Plaintiff

---

[1] The facts and arguments presented in the parties' briefs are duplicated here only to the extent necessary. Portions of the parties' briefs are adopted without quotation designated.

alleged disability due to blown discs in her upper back and a herniated disc in her lumbar region.

In July 2004, an x-ray of Plaintiff's neck showed spondylosis – i.e., degenerative osteoarthritis – at C5-6 and C6-7 of the cervical vertebrae. In August 2004, Plaintiff's primary care doctor, David Myers, D.O., diagnosed degenerative disc disease in Plaintiff's cervical spine, after an MRI had revealed a small protrusion in C5-6. Also in 2004, Plaintiff underwent a carpal tunnel release on her right wrist. Plaintiff continued to work despite these medical problems.

Plaintiff sought treatment with Dr. Myers in 2005 because of neck and back pain, and she reported pain around her neck, shoulders, and back in 2006 and 2007. Dr. Myers began regularly dispensing Plaintiff painkillers and muscle relaxers in connection with her back pain. In December 2005, Plaintiff reported stress and anxiety related to her father's diagnosis of terminal leukemia. Dr. Myers prescribed Xanax for Plaintiff's anxiety. An October 10, 2008 x-ray of Plaintiff's lumbar spine was unremarkable.

On Mach 13, 2008, a non-examining State-Agency employee completed a Physical Residual Functional Capacity ("RFC") Assessment. This assessment opined that Plaintiff was limited to: lifting 10 pounds occasionally and less than 10 pounds frequently; standing and/or walking for at least 2 hours in an 8-hour workday; sitting about 6 hours in an 8-hour workday; and only occasionally engaging in postural activities.

In May 2008, Dr. Myers completed a medical source statement ("MSS") indicating that Plaintiff would be limited to less than an 8-hour workday and would need to lie down

during the day three to four times. He also completed an MSS-Mental indicating that Plaintiff had moderate limitations in her ability to understand and remember detailed instructions, sustain an ordinary routine without special supervision, and complete a normal workday.

In December 2008, Dr. Myers completed another MSS indicating that Plaintiff could sit or stand continuously for only 15 minutes. He noted again that Plaintiff was limited to less than sedentary work and again diagnosed degenerative disc disease of the cervical spine and anxiety.

At the administrative hearing on April 14, 2009, Plaintiff Ritz-Labbee testified that while she did have an upper back problem, it was her lower back problem that prevented her from working. Plaintiff testified that standing up aggravated her lower back pain. Plaintiff stated that she stopped working at her factory job in 2006, when she was laid off. Plaintiff also stated that she was not seeing a mental health professional or receiving psychological treatment, other than her Xanax prescription.

George Horne testified as a vocational expert at the administrative hearing. The ALJ asked the vocational expert to assume an individual of Plaintiff's age, education, training, and work experience who could perform medium work with mild pain – including the ability to stand or walk six hours out of eight hours, sit six hours out of eight hours, and occasionally climb, balance, stoop, kneel, crouch, and crawl. The vocational expert testified that such an individual would be able to perform Plaintiff's past relevant work as a hand packager, a sewing machine operator, or a bench assembler.

## II. Discussion

### A. Standard of Review

In reviewing the Commissioner's denial of benefits, the Court considers whether the ALJ's decision is supported by substantial evidence on the record as a whole. *See Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008). "Substantial evidence is evidence that a reasonable mind would find adequate to support the ALJ's conclusion." *Nicola v. Astrue*, 480 F.3d 885, 886 (8th Cir. 2007) (citation omitted). The Court will uphold the denial of benefits so long as the ALJ's decision falls within the available "zone of choice." *See Casey v. Astrue*, 503 F.3d 687, 691 (8th Cir. 2007). "An ALJ's decision is not outside the 'zone of choice' simply because [the Court] might have reached a different conclusion had [it] been the initial finder of fact." *Id.* (quoting *Nicola*, 480 F.3d at 886).

### B. Plaintiff's Arguments

Plaintiff Ritz-Labbee argues that the ALJ did not properly (1) analyze Plaintiff's credibility, (2) consider the opinion of Plaintiff's treating physician, and (3) determine Plaintiff's RFC. [Doc. # 7 at 1-2.]

#### 1. The ALJ's Credibility Analysis

Plaintiff Ritz-Labbee argues that the ALJ failed to properly evaluate her credibility in light of the two-step test laid out in Social Security Ruling ("SSR") 96-7p. [Doc. # 7 at 16.] This two-step test consists of: (1) determining whether there is a medically determinable physical or mental impairment that could reasonably be expected to produce the claimant's pain or other symptoms, and (2) evaluating the intensity, persistence, and limiting effects of

4

the claimant's symptoms to determine the extent to which the symptoms limit the claimant's ability to do basic work. SSR 96-7p; 20 C.F.R. §§ 404.1529(c)(4) and 416.929(c)(4). When analyzing a claimant's subjective complaints of pain, the ALJ should examine factors such as: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of pain; (3) dosage, effectiveness, and side effects of medication; (4) precipitating and aggravating factors; and (5) functional restrictions. *See Polaski v. Heckler*, 739 F.2d 1320, 1321-22 (8th Cir. 1984).

Plaintiff Ritz-Labbee argues that the ALJ improperly emphasized the objective medical evidence and his own observations at the hearing to discount her testimony. [Doc. # 7 at 16.] However, the lack of objective medical evidence is relevant to the consideration of a claimant's subjective medical complaints. *Kelley v. Barnhart*, 372 F.3d 958, 961 (8th Cir. 2004). On this record, there was substantial evidence for the ALJ to conclude that the objective medical evidence did not show a basis for Plaintiff's claim that her lower back prevented here from working.

In addition to the paucity of objective medical evidence of debilitating lower back problems, the ALJ noted that Plaintiff Ritz-Labbee's failure to seek ongoing treatment for her pain was inconsistent with her allegations of disability. He noted that Plaintiff was not participating in physical therapy, did not perform home exercises, use a TENS unit, or participate in pain alleviating therapy. The Eighth Circuit has held that an ALJ may discount subjective complaints where a claimant has received only conservative treatment. *See Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) (affirming ALJ's decision and noting that

"although Black does experience some limitation, pain, and discomfort, she has never undergone surgery and has relied on a conservative course of treatment, including exercises, home cervical traction, a back brace, and medication") (citations omitted). "In particular, '[a] failure to seek aggressive treatment is not suggestive of disabling back pain.'" *Barrett v. Shalala*, 38 F.3d 1019, 1023 (8th Cir. 1994) (quotation omitted).

Plaintiff argues that "she did not have insurance and her fiancé had to pay for her treatment with Dr. Myers on a cash basis," so her lack of treatment "is not a valid basis for discounting Ritz-Labbee's reports of pain." [Doc. # 7 at 18.] However, in response to the question "whether you might qualify for Medicare" at the hearing, Plaintiff admitted: "They said that I didn't send the paperwork back . . . ." [Doc. # 5, Ex. 3 at 24.] Plaintiff also admitted at the hearing that she had never seen a back specialist. *Id.* at 23. There is no evidence in the record that Plaintiff sought and was denied mental health treatment. *See Osborne v. Barnhart*, 316 F.3d 809, 812 (8th Cir. 2003) ("[A]lthough Ms. Osborne's mother cited 'lack of insurance' as a reason for not pursuing mental health treatment for her daughter, there is no evidence either Ms. Osborne or her mother attempted to obtain treatment, and were denied such treatment because of insufficient funds or insurance.") (citing *Riggins v. Apfel*, 177 F.3d 689, 693 (8th Cir. 1999); *Johnson v. Bowen*, 866 F.2d 274, 275 (8th Cir. 1989)).

Plaintiff Ritz-Labbee's argument regarding the mental limitations Dr. Meyers assessed is similarly flawed. [Doc. # 7 at 17.] Dr. Myers's treatment notes contain no indication of any medical impairments other than anxiety brought on by her father's terminal cancer

diagnosis. Dr. Myers never referred Plaintiff for mental health treatment, and his treatment notes contain no complaints about lack of concentration or attention, or any other mental limitation. *See Gowell v. Apfel*, 242 F.3d 793, 799 (8th Cir. 2001) ("Gowell presented no evidence of ongoing counseling or psychiatric treatment or of deterioration or change in her mental capabilities, factors which disfavor a disability finding.") (citation omitted).

Plaintiff Ritz-Labbee next argues that the ALJ engaged in "sit and squirm" jurisprudence. [Doc. # 7 at 18.] It is true that the ALJ cannot reject Plaintiff's credibility on account of her failure to "sit and squirm" during a hearing. *See Miller v. Sullivan*, 953 F.2d 417, 422 (8th Cir. 1992). Here, however, the ALJ did not rely solely on his observations at the hearing, when he believed she exaggerated her discomfort. Given the ALJ's consideration of Plaintiff's lack of aggressive treatment and the lack of objective medical evidence, in addition to her daily activities and demeanor, it does not appear that the ALJ relied heavily on these latter factors in making his credibility determination.

For the reasons stated above, the ALJ had substantial evidence to discredit Plaintiff Ritz-Labbee's subjective complaints of pain.

### 2. The ALJ's Consideration of the Treating Physician's Opinion

Plaintiff Ritz-Labbee argues that the ALJ should have adopted the restrictions contained in the four medical source statements that Dr. Myers prepared. [Doc. # 7 at 11-15]. She states the ALJ gave "no weight to any of Dr. Myers most generous assessments." [Doc. # 5, Ex. 3 at 14.] The Court acknowledges that the ALJ's decision is ambiguous as to which of Dr. Myers's assessments were the "most generous." Defendant Commissioner

notes that "the ALJ clearly gave some deference to Dr. Myers' assessments and Plaintiff's complaints because he limited her to only occasional climbing, balancing, stooping, kneeling, crouching, or crawling." [Doc. # 10 at 15.] Out of an abundance of caution, the Court will assume that the ALJ gave little weight to the full body of Dr. Myers's assessments.

While a treating physician's opinion is generally entitled to controlling weight, such is only the case where "it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." *Medhaug v. Astrue*, 578 F.3d 805, 815 (8th Cir. 2009) (quoting *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005)). "'An ALJ may discount or even disregard the opinion of a treating physician where other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions.'" *Id.* (quoting *Goff*, 421 F.3d at 790). "When a treating physician's notes are inconsistent with his or her residual functional capacity assessment, we decline to give controlling weight to the residual functional capacity assessment." *Pirtle v. Astrue*, 479 F.3d 931, 933 (8th Cir. 2007) (citing *Hacker v. Barnhart*, 459 F.3d 934, 937 (8th Cir. 2006).

Under 20 C.F.R. § 404.1527(d)(2), when the ALJ does not give the treating source's opinion controlling weight, he considers the following factors in determining the weight to give the opinion: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) "supportability" –

8

i.e., the evidence a medical source presents to support an opinion – and (4) the consistency of an opinion with the record as a whole.

Here, the ALJ focused on the lack of supportability and the lack of consistency in Dr. Myers's assessments. The ALJ found that there was no documentation supporting Dr. Myers's assessment that Plaintiff Ritz-Labbee was totally disabled, either physically or mentally. The ALJ also noted inconsistencies between Dr. Myers's medical source statements and the record as a whole: there was very little treatment for Plaintiff's back pain, and the x-ray of her lower back – the reason she claimed she had stopped working – was unremarkable. Taken together, these constitute "good reasons . . . for the weight we give our treating source's opinion." 20 C.F.R. § 404.1527(d)(2); *see Strongson v. Barnhart*, 361 F.3d 1066, 1071 (8th Cir. 2004) (affirming the ALJ's decision to give little weight to a medical source statement where the completing physician's opinion was "without explanation or support from clinical findings" and "not internally consistent with [his] own treatment notations").

Plaintiff Ritz-Labbee makes much of the fact that a 2004 x-ray of her cervical spine showed degenerative disc disease. [Doc. # 7 at 12.] Plaintiff admitted, however, that it was not her neck pain that caused her to stop working. [Doc. # 5, Ex. 3 at 22.] Moreover, Plaintiff worked for three years after the diagnosis of degenerative disc disease in her cervical spine. *See Dixon v. Sullivan*, 905 F.2d 237, 238 (8th Cir. 1990) ("[The claimant] worked with his impairments over a period of years without any worsening of his condition. Thus, he cannot claim them as disabling.").

Plaintiff Ritz-Labbee also argues that the ALJ improperly disregarded Dr. Myers's mental assessments. [Doc. # 7 at 12-13.] Plaintiff did not cite any mental impairment in her disability report. [Doc. # 5, Ex. 7 at 7.] *See Smith v. Astrue*, 232 F. App'x 617, 619 (8th Cir. 2007) (rejecting plaintiff's claim that ALJ failed to fully develop the record as to her mental limitations, noting that claimant did not allege disability based on mental limitations). The only complaint Plaintiff made to Dr. Myers about mental issues was in December 2005, when her father was diagnosed with acute leukemia and given three months to live. While Dr. Myers continued to prescribe Xanax for the next four years, there is no indication in his treatment notes that Plaintiff complained of continued stress and anxiety, or that Dr. Myers discussed psychological or mental health treatment with her. *See Page v. Astrue*, 484 F.3d 1040, 1043-44 (8th Cir. 2007) (affirming ALJ's decision that claimant's mental impairments were not severe where claimant had been prescribed anti-depressants and sought minimal mental health treatment). There was substantial evidence for the ALJ to conclude that Dr. Myers's treatment records did not support his opinion of extreme mental limitations.

Plaintiff Ritz-Labbee contends that the ALJ did not question her about her alleged mental impairments. [Doc. # 7 at 12.] Toward the end of the hearing, the ALJ asked Plaintiff whether she had anything to add, and she answered "No." [Doc. # 5, Ex. 3 at 35-36.] Her attorney then stated that Plaintiff had difficulties with depression and anxiety. In response to the ALJ's questioning, Plaintiff then testified that she was not seeing a mental health professional and was taking Xanax prescribed by her primary care physician, Dr. Myers. *Id.* "The absence of any evidence of ongoing counseling or psychiatric treatment or

of deterioration or change in [Plaintiff's] mental capabilities disfavors a finding of disability." *Roberts v. Apfel*, 222 F.3d 466, 469 (8th Cir. 2000) (citation omitted).

Again, Plaintiff Ritz-Labbee argues, without supporting evidence, that she was unable to afford treatment. [Doc. # 7 at 12-13.] However, there is no evidence in the record that Plaintiff sought and was denied mental health treatment. *See Osborne*, 316 F.3d at 812 ("[A]lthough Ms. Osborne's mother cited 'lack of insurance' as a reason for not pursuing mental health treatment for her daughter, there is no evidence either Ms. Osborne or her mother attempted to obtain treatment, and were denied such treatment because of insufficient funds or insurance.").

Similar to the analysis above involving the ALJ's credibility analysis, here a failure to seek psychological treatment is not suggestive of a disability. There was substantial evidence to conclude that Dr. Myers's treatment notes were inconsistent with his MSS-Mental indicating that Plaintiff was totally disabled. The only time the treatment records reflected a discussion between Dr. Myers and Plaintiff regarding her anxiety was in 2005. The ALJ acted within the available zone of choice when he discredited Dr. Myers's MSS-Mental where it was apparently based only on Plaintiff's subjective complaints. *See Rankin v. Apfel*, 195 F.3d 427, 430 (8th Cir. 1999) (holding that although a treating physician's opinion is normally entitled to great weight, the ALJ properly discredited the opinion when it was based heavily on claimant's subjective complaints and at odds with the weight of the objective evidence).

11

Finally, Plaintiff contends that Dr. Myers's assessments are consistent with her own reports. [Doc. # 7 at 14.] However, the credibility of Dr. Myers's assessments is called into question in part because they are apparently based only on Plaintiff's subjective reports, rather than objective testing or other medical evidence. *See Kirby v. Astrue*, 500 F.3d 705, 709 (8th Cir. 2007) ("The ALJ was entitled to give less weight to Dr. Harry's opinion, because it was based largely on Kirby's subjective complaints rather than on objective medical evidence.").

For the reasons stated above, the ALJ had substantial evidence to give little weight to Dr. Myers's assessments.

### 3. The ALJ's Residual Functional Capacity Determination

After making his credibility finding, the ALJ incorporated into his RFC determination those impairments and restrictions he found credible. *See McGeorge v. Barnhart*, 321 F.3d 766, 769 (8th Cir. 2003) ("The ALJ properly limited his RFC determination to only the impairments and limitations he found to be credible based on his evaluation of the entire record."). Plaintiff contends that the ALJ's RFC determination is deficient because he failed to provide a narrative statement linking the RFC to the medical evidence, as required in SSR 96-8p, which resulted in a "severe impairment" finding coupled with "virtually no limitations" in the RFC. [Doc. # 7 at 9.] Plaintiff argues that the ALJ substituted his own opinion for the opinion of Dr. Myers and also failed to consider the combined effect of Plaintiff's back pain, anxiety, carpel tunnel syndrome, and obesity.

12

Plaintiff contends that the ALJ failed to provide a logical bridge indicating how the evidence supported a finding that Plaintiff could perform medium work. *Id.* at 7-9. Again, Plaintiff relies on the 2004 MRI of her cervical spine showing degenerative changes. *Id.* at 8. As discussed above, Plaintiff testified that only her lower back pain prevented her from working. [Doc. # 5, Ex. 3 at 22.] Moreover, Plaintiff worked for three years after the degenerative disc disease in her neck was diagnosed, including her medium level job as a sewing machine operator. [Doc. # 5, Ex. 7 at 14-15.] Given the lack of objective medical evidence indicating that Plaintiff had an impairment affecting her lower back, there was substantial evidence for the ALJ to find that she was capable of work performed at the medium exertional level of her past relevant work. *See Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004) ("The burden is on the claimant to demonstrate that he or she is unable to do past relevant work.") (citation omitted); *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001) ("It is the claimant's burden, and not the Social Security Commissioner's burden, to prove claimant's RFC.") (citation omitted).

Considering the burden on Plaintiff to demonstrate that she was unable to perform her past medium level job, the ALJ's mere finding of a "severe impairment: back pain" did not detract from the logical bridge otherwise provided in his decision: Plaintiff's failure to prove her case results in an RFC consistent with her past relevant work, but including some restrictions where Plaintiff has adduced credible evidence. [Doc. # 5, Ex. 3 at 15.] At the outset of his decision, the ALJ sets out "a five-step sequential evaluation process for

determining whether an individual is disabled." *Id.* at 12. At step two – before reaching the RFC issue – the ALJ explains a legal dichotomy related to Social Security terms of art:

> An impairment or combination of impairments is "severe" within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities. An impairment or combination of impairments is "not severe" when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work.

*Id.* (citations omitted). From the ALJ's analysis, it appears that Plaintiff's condition would fit uncomfortably in either the "severe" or "not severe" category. The ALJ never engaged in an analysis of this issue, but rather appears to have assumed that Plaintiff's condition could be categorized as a severe impairment. Even so, the ALJ still found – upon reaching step four involving the RFC determination – that Plaintiff had not fulfilled her burden to demonstrate that she was unable to perform her past medium level job. Merely because an impairment interferes with work does not necessarily mean that the impairment makes the work impossible. Therefore, the ALJ had substantial evidence to conclude that Plaintiff's RFC was "medium work . . . except for occasional climbing, balancing, stooping, kneeling, crouching, and crawling." *Id.* at 15.

Finally, Plaintiff argues that the ALJ failed to properly consider her anxiety, carpel tunnel syndrome, and obesity, in combination with her back pain. As noted above, the ALJ need only include in his RFC analysis those limitations that he found credible. *See McGeorge*, 321 F.3d at 379. Again, given the lack of evidence that Plaintiff was

14

experiencing anxiety, other than in connection with her father's terminal illness, the ALJ had substantial evidence to find that Plaintiff had no anxiety-related limitations.

With respect to her carpel tunnel syndrome, Plaintiff had not complained of wrist pain after her 2004 surgery. Plaintiff did not mention any wrist pain at her administrative hearing. Therefore, there was no reason for the ALJ to discuss Plaintiff's carpel tunnel syndrome in his decision. *See Wall v. Astrue*, 561 F.3d 1048, 1062 (8th Cir. 2009) ("Importantly, Claimant never alleged that she suffered from a severe mental disability at her administrative hearing: The ALJ's failure to discuss [the issue] is, therefore, unsurprising.").

With respect to her alleged obesity, there is no evidence that Dr. Meyers diagnosed Plaintiff as obese, and Plaintiff's weight was never the topic of one of her visits to Dr. Myers. *See McNamara v. Astrue*, 590 F.3d 607, 611-12 (8th Cir. 2010) ("Given that neither the medical records nor McNamara's testimony demonstrates that her obesity results in additional work-related limitations, it was not reversible error for the ALJ's opinion to omit specific discussions of obesity." (citing *Forte v. Barnhart*, 377 F.3d 892, 896-97 (8th Cir. 2004)). Again, in light of the absence of evidence, the Court cannot accept Plaintiff's argument that the ALJ erred by failing to discuss her obesity.

For the reasons stated above, substantial evidence supports the ALJ's RFC determination. As with his credibility analysis and consideration of the treating physician's assessments, the ALJ's RFC determination also falls within the available zone of choice. Therefore, the Court affirms the ALJ's decision finding that Plaintiff was not disabled.

## III. Conclusion

Accordingly, it is hereby ORDERED that Plaintiff Glenda Ritz-Labbee's Social Security Complaint [Doc. # 3] is DENIED.

s/ NANETTE K. LAUGHREY
NANETTE K. LAUGHREY
United States District Judge

Dated: October 12, 2010
Jefferson City, Missouri